Tbe opinion of tbe Court was delivered by
WITHERS, J.
By tbe Act of 1854, p. 271, two several subscriptions by tbe State, to tbe stock of tbe Blue Bidge Bailroad Company, of balf a million eacb, were contemplated, and were authorized to be made by tbe Comptroller General, upon contingencies specified. In a clause subsequent to that (tbe first) wbicb authorized the subscription, at two different times, of one million of dollars, a provision (in tbe fifth clause) is made to raise, on tbe part of tbe State, tbe entire sum by bonds, to be made payable at such periods, that the whole million should be payable in five equal instalments of two hundred thousand dollars, the first to be payable at tbe expiration of twenty years, and one other annually thereafter. But it was provided, that tbe subscriptions by tbe State might be paid in cash, or in said bonds, at tbe par value, according to tbe discretion of tbe Comptroller and tbe Governor.
It is manifest that tbis scheme of paying subscriptions to tbe company, in instalments of two hundred thousand dollars eacb, and raising tbe money upon bonds that should become-payable in different years, in five several amounts, corresponding to tbe payments to be made upon subscriptions, were based upon the presumption that tbe whole million of dollars would be subscribed. It turns out, that but balf that sum has been subscribed, and certificates of stock taken for it, and one hundred thousand dollars of that subscription remains *255 unpaid, and is refused by tbe Comptroller General, upon tbe ground, that as to payments on subscriptions, and as to bonds to be issued for providing tbe means to make them, two hundred thousand dollars, and not one hundred thousand dollars, are the sums imperatively fixed.
As already observed, this scheme of fixed amounts in five several instalments can refer only to the entire liability for one million. It is totally impracticable when (as is the case) the liability to pay is limited to half a million, and the authority and duty to raise the means extends to no more. It can never be assumed, that the State did not mean to pay,, in good faith, the first subscription of half a million, and in fall, pari passu with other subscribers, upon legitimate calls; or that the State meant to retain one-fifth part of its first subscription until the second, of half a million more, should be made. Suppose the authorized discretion to pay in cash had been exercised to the extent of four hundred thousand dollars, it cannot be supposed that the remaining one hundred thousand dollars would not be payable either in cash or in bonds. In such case it appears to us, that the said one hundred thousand dollars could be raised, according to the true intent of the Act by making the bonds, issued for that purpose, payable at such time as would bring them within that instalment, as to the time of payment, to which they would have pertained, if the scheme of paying a million in bonds, in portions of two hundred thousand dollars each, had been carried out. If that had occurred, the last one hundred thousand dollars of the first subscription, and the first one hundred thousand dollars of the second subscription would have required bonds payable in the same year, although it may have happened that they could not have been issued at the same time.
We think, therefore, the Comptroller General, while he should be held meritorious when guarding vigilantly the treasury of the State, is in error upon the present question; *256 and tbat the relator is entitled to the money or the bonds, to which the law has given him a right, and which has been denied to him.
It has been suggested that the defendant seeks only the judgment of this Court, and as this is an appeal from an order to show cause why a mandamus should not issue, we suppose it to be sufficient to dismiss that motion, and it is ordered accordingly.
O’Neall, Wardlaw, WhitNer, and Munro, JJv concurred.

Motion dismissed.